May it please the Court, my name is Kevin Winters, I represent Tim Alsup. Mr. Alsup is seated with me at the table. I would like to reserve three minutes for rebuttal. What have you got left on the clock? I'm sorry? What have you left on the clock when you stopped talking? Maybe yours. Your Honors, this case begins and ends with Washington's insurance consumer protection statutes and how Washington courts have applied those statutes to advance Washington's strong public policy protecting insurance consumers and innocent victims of underinsured drivers. When Tim Alsup purchased the QBE auto insurance policy at issue in this case, he was a single man living alone and had been for many years. He signed a waiver, declining coverage, which the waiver described as, and I quote, family protection against underinsured motorist bodily injury. It appears in the record on page 41. During the policy period, Mr. Alsup was smashed into by a drunk driver who didn't carry sufficient liability insurance to pay for his damages. The dispositive issue in this case is whether this QBE waiver is a waiver of a nonexistent family protection coverage or instead a waiver of Washington's statutory underinsured motorist coverage. There are many issues and arguments presented in this case that deserve attention, but I'm going to focus my limited time here on three main points. The first is the very high standard imposed by Washington law for written UIM waivers. The second is QBE's waiver and the meaning of the plain language of the waiver. And the third is why the QBE waiver does not meet the very high standard imposed by Washington law because it is not specific and unequivocal writing, manifesting, an affirmative and conscious act by Mr. Alsup that is inconsistent with any other interpretation than intent to waive. All those standards are taken directly from recent Washington case law. Now the first topic is the standard imposed by Washington law. The Washington legislature decided that UIM coverage is a very important coverage and so they enacted consumer protection statutes to advance a public policy ensuring this coverage was offered and, in most cases, accepted by Washington drivers. In order to do that, they required a signed written waiver of UIM coverage and in the absence of that waiver, there would be coverage. Now Washington courts have implemented this legislative intent by imposing a high burden on that waiver as a prerequisite to it being effective. As the Supreme Court said in Clements at page 251, the legislature passed the statute to increase and broaden the protection of the public through UIM coverage. Now in Clements we had, this is a case where there was an employee of a sophisticated employer, a large employer, I think this is the one where they had a vice president of insurance coverage, who created a binder, he went out to, I think it was Marshall McLennan, created a binder, said this is the coverage we want and got bids from various insurers. They had no intent to buy UIM coverage. There was no coverage in the policy. There was no coverage in the declarations pages. And the argument was that the intent was clear, that the employer did not intend to buy UIM coverage. And the Supreme Court said that's not good enough. The intent may be clear, but there's no written waiver. Therefore, under Washington statutes, there is UIM coverage imposed on the contract. Here you have a written waiver. So, you know, all those cases are interesting, but you've taken half your time and haven't really gotten to the issue of this case. In this case, where there is a written waiver, you are arguing by the text of the waiver. And as far as I can tell, you argue with only one word, and that's the word family. If the word family had been permitted, your argument wouldn't exist, right? Family protection is the phrase I've been focusing on. No, no, you don't even need protection. I mean, you can leave protection in there. Family protection rather than protection is the point of the question. I don't think it makes a difference. It's the word family, right? I mean, I'm trying to figure out what you think the waiver should have said to make it clear. And as best I can tell, what you're saying is they should have removed the word family. Yes. That's right. I mean, that's your claim. Yes. Okay. Well, let's get down to your claim. Is there a difference in premium if you accept? He signed reject, or he X'd reject and signed under it. Is there a difference in premium if he had accepted? Said, I accept, and checked limits here, and they wanted some more insurance? Yes, there is a difference. Would there be a difference in premium? There is a difference in premium. Did he pay any difference in premium? No, he did not pay the extra premium. So how was he confused? Well, the confusion is that Mr. Alsup lived alone. He did not have a family. And he reads this waiver and it says you can buy family protection against underinsured motorist bodily injury. Well, he didn't have any family to protect by buying this coverage, which, as Your Honor points out, you pay extra for. So he didn't buy it. Okay? And the reason the high standard imposed by Washington law is important here is that all of these cases, you have clear intent by sophisticated buyers not to buy UIM coverage, and the courts have said that's not enough. And in this case, we don't even have that. We have an unsophisticated buyer with a confusing and misleading waiver. What if it had said individual or family protection? That would have been okay, right? That would be a very different case, absolutely. I know it's a different case. That's why. I mean, how would you, under your theory, how would that case come out? Well, he would not have coverage because the coverage. You think that would have cured the problem, either removing the word family or saying individual and family, either by adding two words or by removing one word. Either of them would have solved the problem. Yes. Okay? And the reason for that is because he's being presented with a choice to buy policy that is described as protecting people that he doesn't have a family. He can't protect them. Your position, I gather, is that it's reasonable for him to have read that and to reject it because he didn't need it. Is that right? Right. No. And the second part of that argument is that the UIM coverage, which the insurer is saying this doesn't reject family protection. This rejects UIM. Well, UIM, you don't need a family. It protects you from the other driver not having enough insurance. It doesn't protect your family. It protects you. Well, what you're saying is, I gather, that if we find that the reference to family protection does not create an ambiguity, you're unsuccessful. Well, it's a fine distinction. Under Washington law, if there's an ambiguity in the insurance contract, then, yes, you construe it against the insurer in favor of the insured. I think there's an undefined incremental burden on the insurer here because of the high standard under Washington law for these waivers in particular. I thought your argument was slightly different. What I thought you were arguing is that this is not a waiver and without a written waiver. This doesn't waive the coverage to which he's entitled. And since there's no waiver, then he gets a protection by operation of law. There's nothing to construe. That is what I'm saying. He was asking me if it's not ambiguous, then I don't win. And I'm saying, no, it's more than just being – it doesn't have to be unambiguous. They have to prove that it's specific, unequivocal, should manifest a clear intent that is – you cannot interpret in any other way inconsistent with waiver of UIM coverage. So all I'm asking the Court to do is apply the standard of Washington law. It clearly does waive. I mean, on the waiver part, there is no doubt that it is clear that it waives whatever the thing there is. Your argument is really slightly different, that in reading the thing he's waiving, he misunderstands what he's waiving. It's not the waiver aspect that's unclear. He clearly, by signing this, he says reject. I mean, I'm sure he understands what reject means. Absolutely. And he understands, I'm sure, that that's a waiver, that he's giving up this coverage. Your argument is not that this is an ambiguous waiver, but that there is – that this misled him into knowing what he was giving up. Exactly. Okay. Yes. I'd like to reserve my remaining time for rebuttal. All of you have six minutes, seconds. Yes. We'll hear from the insurance company. I've been really eager to find out from your argument why you stuck the word family in this waiver form. And I think we have the answer to that, although we don't have it by – Other than that somebody is sorry now? Well, that could be. We pointed out in our brief, and it's in a footnote only, and it's in response to the other side saying, what is this? I just put it on the front page because that's the big question here. Family protection was an old name for uninsured or underinsured coverage. It simply is an old name for that. In other words, you don't have a good reason. There isn't another reason. The fact that you're using archaic terms just shows that what you're doing there is communicating with the consumers in ways that are wholly unintelligible. I think that's an exaggeration. Your total constituency is not legal scholars, right? Pardon? Your total constituency, your customers, are not all legal scholars, I gather. No, and I don't think family protection is a legal term. It's an insurance term. I don't think it's a legal term. I'm not one of the insurance scholars either, are you? No, no. I've never heard of this term. Good morning, Your Honor. Jerry Sale for QBE Insurance. I thought I'd mention it along the way. I think the word family protection is not helpful in that clause. I think it's Mr. Alsup's waiver, but it's on a piece of paper that was provided by QBE. I think the question in this case is whether or not it effectively works to waive the coverage in this case. That is, this is the coverage was offered. UIM and PIP were both offered. This is not a correlate case. Well, right, exactly. But you can sort of see you're sitting there signing this stuff, and you get it that says all family protection. You say, well, I'm not going to bother reading this. I don't have a family to protect. And everything that comes afterwards is going to deal with protecting the family, which I don't have. I don't see any – I mean, I think that's certainly a plausible way of looking at the thing. And since you are dealing with consumers, you have to look at it from a plausible consumer's point of view. I think if you gave this form, you know, you stopped 100 people in front of the courthouse, and you say take 15 seconds to read this thing and tell me whether it protects – you know, who it protects, I think 99 would say 100 family. Let me make several points about that. The number one point I want to make is Mr. Winters did not address PIP, but PIP is also here. And if you take a look at PIP and you take a look at Excerpt of Record 41, which is among the papers I gave you today, PIP is in a separate box. It has – it is a separate box with a separate signature. How do the two interact? They don't. He argues they do because the word family is up above – You see the big – you got the form there? Yes. So they got the big box, and he accepted everything to the maximum in the first box. Yes. And then he done reject in the second box. Where would he be today? He would not have PIP. He would have UIM for whatever amount he specified UIM. What is the difference between PIP and UIM? PIP is a no-fault coverage. It used to be called MedPay. It provides coverage for a person who qualifies as an injured person, has a relationship to the car. It doesn't require a tort fees. It's a no-fault provision that's allowed for the person in the car. So if this is something that – where he hits the – a brick wall, he'd be covered by PIP. Under. Whereas under the first one, you actually have to have some other guy who's underinsured. Correct. Correct. So you're conceding the first one? I am not conceding the first one. I am going to point out – It makes a difference whether the first one applies. It's not irrelevant. The word family is in the first one. Mr. Winter's argument is that the word family infests everything. My argument is that his overblown – I understand your argument, but you could win on the second one, the PIP, and lose on the first. It's possible. Now, I'm trying to progress from one to the other, but I'm not very successfully making that move. All I'm trying to point out first is that we have three separate boxes. In one box, having to do with PIP, we have two boxes checked. One says, I reject PIP, and the next one says, I do not wish any PIP. It's signed. It's dated separately. There should be no question about this. How clear can a waiver be? But leaving that aside, if you look at the difference in language between the PIP, which doesn't contain the assertively infected word, and the other one, doesn't that in a way support his position about the problem with the underinsured or uninsured motorist? Well, I don't think so, but let me address that. All I'm saying now is in regard to PIP, the word family doesn't belong in the argument. In regard to UIM, the word family belongs in the argument. It's in there. So then I have three points to make about that. Number one is I don't believe it's ambiguous even with the word family there. Number two is that we use extrinsic evidence to help answer this question under Washington law. And number three is, and this is not an argument that was in our brief. In fact, our brief said something different about this, but the argument is that this application itself can be an unambiguous waiver, a rejection. And let me say why. I'm going to start with the third. The application, the rejection is not required to be in any specific form. It's required to be in writing. That's all. If you take a look at the application itself, the application says on it, it's signed, it's dated, and it says in very small print, I hereby apply to the company for a policy of insurance set forth in this application on the basis of the statements contained herein. If you look above on that page at the statements, it's very clear. It says personal injury protection, no dollar amount rejected. Underinsured motorist, BIPD, no dollar amount rejected as to each. Where there are coverages included, it says included, and where there's no coverage separately or you don't have to reject it and there's no coverage, it says no coverage. That is a clear rejection. Now, there's nothing at all affecting that. It's a clear rejection of those coverages. He didn't want to pay a premium. He stayed for only a few minutes at the agent when he came in to buy it. He paid no premium for it. And on top of that, he had a policy that came out which specified exactly what those coverages were. Under Washington law, he is deemed to have read that policy, and that also shows the intent. If he didn't want the coverage and it's in there, he should have told somebody. There is a waiver requirement. Doesn't the waiver have to be clear? The waiver has to be clear, yes, and unequivocally. And you think that if you look at the policy itself, it says I hereby apply for policy and so on, and you look up there and you say I'm going to show more to this and so on, you think that's clear? Yes, absolutely, perfectly clear. Even when you also tender a form of waiver, you're saying that the primary consumer is supposed to understand that what is tendered being confusing is somehow undone by the existence of the application. Well, we make the argument in two ways. Yes, I think this application alone can be a clear expression of waiver. This is what QBE receives. But can it, when it's coupled with a tender of a proposed waiver, may not do the job? In addition, I think it explains that. It says please read. Yes, it says please read this. And he reads it the first day he sees his family. He reads it. He says I understand this. That's what it says. I understand this. Now, he spent no time understanding it according to his own testimony. He did not ask any questions. It says here I understand this and I sign it and I reject all this stuff, and he checks those boxes. Now he wants to say that he understands there is a kind of coverage that does not exist in this world. There is no such thing as coverage only for family members as to which you would pay a premium. Never existed. Never will exist so far as I know. And he's saying I understand this when he doesn't, and he signs it. He sends it off to QBE. He says this is what I want. He says I'm not paying any premium for it. I get my policy. Instead of putting a nice, friendly word like family in there, you had used the all-purpose word that's current now, anti-terrorism insurance. Would that then give him some waiver against anti-terrorism insurance? I'm not sure how this hypothetical you're offering works into this. The word family seems to have been stuck in there by some warm and fuzzy secretary or scrivener who didn't know what he or she was doing, and it's just there. I think the reason it got in there so far as we can tell is that was the name of the insurance to somebody, and they put it in there. Yes, if that word family weren't in there, we wouldn't be here today. On the other hand, the fact that it's in there I don't think makes anything unclear. I think you should tell your client this is an important and really not a very expensive lesson in the need to revise one's forms. Why don't you go out of here when you leave and just settle this case? Okay? You're not going to win this one. So just kind of check and let's... There is UIM, Your Honor, and there is PIP. We understand. We understand. All right. Okay, but counsel is here. The client is here. Make this case go away. You don't want me to write an opinion. Trust me. I thank you, Your Honor. Would you like two days to let us know the case is settled? Well, I'll defer submission until Monday or Tuesday, and if you guys settle, you can. If not, I'll start writing. And then there will be law. How do we contact the court? Talk to Stacy. The clerk right here. Okay. We are adjourned.
judges: Goodwin, Kozinski, Shadur